IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID MADRID

    Plaintiff,

vs.                                                                                                                                            No. CIV 12-0451 JB/GBW

DON KELLY CONSTRUCTION, INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** comes before the Court on Defendant's Motion to Compel and Memorandum Brief in Support Thereof, filed November 8, 2012 (Doc. 30)("Motion to Compel"). The Court held a hearing on November 29, 2012. The primary issues are: (i) whether the Court should compel Plaintiff David Madrid to amend his answers to Defendant Don Kelly Construction Inc.'s First Set of Interrogatories; and (ii) whether the Court should compel Madrid to produce certain documents in response to Defendant's First Request for Production of Documents. The Court will grant in part and deny in part the Motion to Compel. The Court will deny Don Kelly's request to compel Madrid to provide a release for medical records or information from the United States Social Security Administration ("Social Security"), because discovery of this information will not likely produce admissible evidence, as Madrid has not sought medical services in the past five year and is not alleging damages for which Social Security benefits would provide probative information. The Court will grant Don Kelly's request to compel Madrid to provide tax records, with spousal information redacted, and employment information within the last ten years, because the information sought is limited in scope and is reasonably related to the discovery of admissible evidence which Don Kelly will

use to further develop the facts of this case as well as possibly establish an after-acquired defense.

## FACTUAL BACKGROUND

Don Kelly employed Madrid from June 28, 2010 until Don Kelly terminated him on November 29, 2010. See Madrid's Complaint for Wrongful Termination Based on Discrimination and Retaliation with Six Person Jury Demand ¶ 19, at 4, filed in state court on February 15, 2012, filed in federal court on April 27, 2012 (Doc. 1-1)("Complaint"); Affidavit of Mika Kelly ¶ 5, at 2, filed April, 27, 2012 (Doc. 1-2)("Affidavit"). Don Kelly is a corporation organized under the laws of the State of Montana, with its principal place of business in Montana, and, therefore, is a citizen of Montana for the purposes of determining diversity. See Removal at 5. Madrid is a citizen of the State of New Mexico. While employed at Don Kelly, Madrid earned an hourly rate of $25.61. See Affidavit ¶ 6, at 2. Madrid is of Hispanic/Mexican-American descent. Madrid alleges that his supervisor, Tom Riggio, of Anglo descent, disciplined and discriminated against him on the basis of his race. See Complaint ¶ 5-8, at 2; Plaintiff's Answer to Interrogatories, Interrogatory No. 12, at 8, filed November 8, 2012 (Doc. 30-1). Madrid alleges that he was intimidated and harassed on a daily basis. Madrid requested the position of Operator for a Motor Grader, but Riggio offered the position to another employee. See Complaint ¶ 7, at 2; Interrogatories at 8. Madrid does not remember the other employee's name, but does recall that the other employee is of Anglo descent. This employee, unlike Madrid, did not know how to operate the motor grader. See Complaint ¶ 7, at 2; Interrogatory No. 10, at 7-8. Madrid wrote to Don Kelly about the discrimination. See Complaint ¶ 7, at 2; Interrogatory No. 10, at 7-8. Madrid also alleges that, despite turning in his time card on time, he was paid later than the other employees. After approaching Riggio about not receiving payment with the other employees on Thanksgiving Day, 2010, and receiving no response,

Madrid contacted Don Kelly's corporate office. See Answer to Interrogatory No. 11, at 8. The corporate office explained to Madrid that Riggio did not turn in his time card. See Answer to Interrogatory No. 11, at 8. Additionally, the corporate office told Madrid that it thought it was odd that Riggio had not turned in hours for Madrid. See Answer to Interrogatory No. 11, at 8. Madrid called Riggio again, telling him about the conversation with the corporate office. Madrid alleges that Riggio was upset and, upon Madrid's return to work after the Thanksgiving break, Riggio initially tried to not pay Madrid for the past time. When Madrid told Riggio he still needed to be paid, according to Madrid, Riggio threw the time sheets at him. Upon telling Riggio that he would not be intimidated and wanted to be paid, Riggio fired Madrid. See Complaint ¶ 8, at 2; Answer to Interrogatory No. 11, at 8. Madrid alleges that Riggio fired him in retaliation for complaining about not being paid on time. See Complaint ¶ 8, at 2; Answer to Interrogatory No. 11, at 8.

## PROCEDURAL BACKGROUND

On February 15, 2012, Madrid commenced this action against Don Kelly by filing in the Third Judicial District Court for the State of New Mexico, County of Don Aña, New Mexico, a wrongful termination complaint based on "discrimination and retaliation." Complaint at 1. Madrid alleges that Don Kelly "intentionally discriminated against, and discharged" him "because of his National Origin." Complaint ¶ 10, at 1. Additionally, Madrid alleges that Don Kelly "engaged in forms of threats, reprisal and discrimination" against Madrid, "who had opposed unlawful discriminatory practices." Complaint ¶ 12, at 3. Madrid's claims for damages include past and future: lost wages and benefits, employment opportunities, lost income, loss of earning capacity, mental anguish, emotional pain and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. See Complaint ¶ 16, at 3.

Don Kelly removed the lawsuit to federal court on April 27, 2012. See Notice of Removal, filed April 27, 2012 (Doc. 1). Madrid argues, under New Mexico law, the following damages elements are recoverable under his claims: back pay benefits, front-pay benefits, lost employment opportunities, emotional pain and suffering, and attorney's fees. See Complaint ¶ 16, at 4; See Notice of Removal at 3. Madrid also demands punitive damages. See Complaint ¶ 16, at 4. Pertinent to Madrid's back pay: Madrid was terminated on November 29, 2010. See Affidavit at ¶ 5, at 2. While employed at Don Kelly, Madrid earned an hourly rate of $25.61. See Affidavit ¶ 6, at 2. Calculating Madrid's back pay claim at the rate of $1,024.40 per week, multiplied by 126 weeks, produces $129,024.00. Madrid also has a claim for front pay and attorney's fees, both for the Court to determine. See Complaint ¶ 20, at 4. Additionally, Madrid has claims for emotional distress and punitive damages. See Complaint ¶16, 20, at 3-4. According to Don Kelly, the amount in controversy is above $75,000. See Removal at 2-5.

On August 30, 2012, Don Kelly served the First Set of Interrogatories and requested Production. These requests required Madrid's response by October 2, 2012. See Motion to Compel at 2. On September 28, 2012, Madrid requested an extension to respond until October 23, 2012. See Motion to Compel at 2. Don Kelly gave Madrid an extension until October 14, 2012, and Madrid served his responses on that day. See Interrogatories at 1; Plaintiff's Responses to Request for Production, filed November 8, 2012 (Doc. 30-2)("Response to Production"). On October 15th, Madrid received Supplemental Discovery responses from Don Kelly. See Plaintiff's Supplemental Answers to Interrogatories at 1, filed November 8, 2012 (Doc. 30-3)("Supplemental Answers to Interrogatories"). Don Kelly asked Madrid to further supplement his answers and responses to its discovery requests. See Motion to Compel at 2; Letter from Anna Tuttle to Brett Duke at 1 (dated October 25, 2012), filed November 8, 2012 (Doc. 30-4)("Letter from Tuttle to Duke"). Madrid responded to Don Kelly's request and stated

he was unable to answer the interrogatories any further. See Motion to Compel at 2; Letter from Brett Duke to Anna Indahl (dated October 30, 2012), filed November 8, 2012 (Doc. 30-5)("Letter from Duke to Indahl").

In his Supplemental Answers to Interrogatories, Madrid asserts that he was terminated from Don Kelly ninety-eight weeks ago, and that he did not work for fifty-eight weeks after his termination. See Supplemental Answer to Interrogatory No. 1 at 2. He calculates his lost wages based on his representation of regular and overtime pay for those fifty-eight weeks. See Supplemental Answers to Interrogatory No. 1 at 2. Madrid makes no calculation for any lost wages after fifty-eight weeks, although he indicates that he is earning less at his subsequent job at the International Boundary and Water Commission ("IBWC").[1] See Motion to Compel at 3-4. Based on his answer, Don Kelly asks Madrid to confirm that he does not seek any lost wages outside of the fifty-eight weeks outlined in his Supplemental Answer. See Motion to Compel at 3. Also, Don Kelly asks Madrid to indicate the amount and provide a calculation of those damages if he claims damages outside of the fifty-eight weeks. See Motion to Compel at 3-4. Don Kelly also asks Madrid to supplement his answer by providing documentation supporting his claim for damages, as the Interrogatories request. See Motion to Compel at 3-4; Answers to Interrogatory No. 1, at 2. Madrid responds that he does not have documentation to support his damages calculation and that, if he decides to seek damages outside of the fifty-eight weeks, "he will let the (Defendant) know." Motion to Compel at 4.

Interrogatory No. 2 asks Madrid to fully identify, including the relevant address and telephone number, each of his employers since January 1, 2007. See Motion to Compel at 4.

---

[1] The United States component of the International Boundary and Water Commission, established in 1889, applies the United States/Mexico boundary and water treaties and settles differences that may arise in the treaties' application. See Int'l Boundary & Water Comm'n, United States Section, http://www.ibwc.gov/home.html (last visited April 22, 2013).

Madrid's answer did not provide an address or telephone number for any of his employers. Madrid said he could not recall the names or other identifying information about his past or current employers. See Motion to Compel at 4; Answer to Interrogatory Nos. 2, 3, at 2-3.

Madrid identified Jesusito and Noah as two witnesses he expects to testify at trial. See Motion to Compel at 4; Answer to Interrogatory Nos. 5, 6, at 4-6. Madrid did not provide further identifying or contact information for Jesusito nor Noah, such as their last names. See Answer to Interrogatory Nos. 5, 6, at 4-6. When Don Kelly asked for more complete information identifying those witnesses, see Motion to Compel at 4, Madrid stated that the witnesses are identified to the best of his ability, see Letter from Mr. Duke to Ms. Indahl at 3. Additionally, Madrid identified Henry Martinez as a witness and stated that Martinez should be contacted through counsel. See Answer to Interrogatory Nos. 5, 6, at 4-6. Don Kelly notes that Martinez brought a similar lawsuit against Don Kelly in 2011, but the suit has since been fully resolved. See Motion to Compel at 5. Don Kelly asked why Martinez should be contacted through counsel, see Motion to Compel at 5, to which Madrid has not provided an answer, see Motion to Compel at 4; Answer to Interrogatory Nos. 5, 6, at 4-6.

Madrid claims mental and emotional distress damages in this case. See Complaint ¶16, 20, at 3-4. Don Kelly asserts that Madrid's medical history is therefore at issue in this litigation. See Motion to Compel at 5. Interrogatory No. 8 requests Madrid to identify his physical and mental health history, and his health care providers for the past five years. See Answer to Interrogatory No. 8, at 6-7. It also requests that Madrid execute the Court's HIPAA-approved[2]

---

[2] HIPAA is the abbreviation for the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191 110 Stat. 1936 (codified as amended at 42 U.S.C. §§ 17937-54). The Court has previously noted that HIPAA "is a federal law that congress enacted to protect individuals' medical information from disclosure." Coffey v. United States, No. CIV 08-0588 JB/LFG, 2012 WL 5995622, at *9 (D.N.M. Nov. 25, 2012)(Browning, J.)(citing 42 U.S.C. § 1320d-5(a)).

medical records releases. See Motion to Compel at 5-6; Answer to Interrogatory No. 8, at 6-7. Madrid objects to this request for health information, and also contends that the Interrogatory exceeds the scope of discoverable information, is overly broad, and is unduly burdensome. See Answer to Interrogatory No. 8, at 6-7. Madrid also objects "to defendant seeking the creation of a document that is not in existence" and to "endorsing a blank medical authorization that is not specific." Answer to Interrogatory No. 8, at 6-7. Furthermore, Madrid states that he has not seen a doctor in the past five years. See Motion to Compel at 5-6; Answers to Interrogatories at 6-7.

Don Kelly requests that Madrid produce his W-2 statement, and state and federal income tax returns. See Motion to Compel at 6-7; Response to Production at 2. Madrid refuses, stating that they are not in his possession and are beyond discovery's scope. See Motion to Compel at 6-7; Response to Production at 2. Don Kelly requests that Madrid produce any documents upon which he relied in responding to Don Kelly's Interrogatories. See Motion to Compel at 7. Madrid alleges that the documents are protected under the work product doctrine.[3] See Response to Production at 2. Don Kelly asserts that, when asked to explain which documents are privileged, Madrid neither withdrew his objection nor produced any responsive documents. See Motion to Compel at 7; Response to Production at 2. Don Kelly requests that Madrid execute releases for employment, health, and Social Security records. See Motion to Compel at 7-8. Madrid did not execute the releases, asserting that he is not required to create documents that are not in existence. See Response to Production at 2. Additionally, Madrid argues that the releases are overly broad, are not limited in time, lack specificity, and seek information beyond the scope of reasonable discovery. See Motion to Compel at 7; Response to Production at 2.

The Court held a hearing on November 29, 2012. The parties stipulated that Jesusito and Noah (last names unknown) will not be called at trial. See Liberty Court Player at 2:31:47-

2:32:10 (taken November 29, 2012)(Indhal)("Liberty").  The parties agreed that, if Madrid finds either Jesusito or Noah, and decides to call them as a witness, Don Kelly may take their depositions before they are called at trial.  See Liberty at 2:32:34 -2:33:38 (Indhal).  The parties also stipulated that Martinez will not be called as a witness.   See Liberty at 2:32:29-2:32:34 (Indhal).

During the hearing, the Court ordered Madrid to calculate damages and to state whether he is seeking damages past the fifty-eight week period.  Additionally, the Court ordered Madrid to state that the calculations do not rely on documents.  See Liberty at 2:10:43-2:11:03 (Court). Madrid agreed, stating he would calculate damages and state whether he relied on documents for the calculations.  See Liberty at 2:11:04- 2:11:16 (Duke).

Additionally, the Court granted the Motion to Compel and ordered Madrid to sign the employment release.  See Liberty at 2:19:08-2:19:31 (Court).  The release will go to Madrid's employers for the past ten years.  See Liberty at 2:19:27-2:19:31 (Court).  Regarding the Social Security and medical releases, the Court stated that it will not compel Madrid to sign the releases, because he represents that he has not seen a doctor in five years and that he is not seeking Social Security benefits.   See Liberty at 2:24:42-2:25:45 (Court).   If, during a deposition, Madrid states that he sought services from Social Security or a doctor in the past five years, then the Court orders Madrid to sign a release allowing Don Kelly access to medical and Social Security records.  In that instance, Don Kelly can re-depose Madrid.  See Liberty at 2:24:57-2:25:45 (Court).  Regarding the W-2 and tax returns, the Court ordered Madrid to produce tax returns with Madrid's spouse's information redacted.   See Liberty at 2:29:33-2:30:59 (Court).  Additionally, the Court ordered Don Kelly to prepare and send a draft confidentiality order to Madrid.  See Liberty at 2:29:56-2:30:59 (Court).

---

[3] The work product doctrine protects materials prepared in anticipation of litigation from

**RELEVANT LAW REGARDING DISCOVERY**

The proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Information sought is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The Tenth Circuit has noted that, under rule 26, discovery's scope is broad:

> The scope of discovery under the federal rules is broad and that "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 . . . (1978). We have pointed out that discovery in discrimination cases should not be narrowly circumscribed.

Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1520 (10th Cir. 1995). See Sanchez v. Matta, 229 F.R.D. 649, 654 (D.N.M. 2004)(Browning, J.)("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information."). The federal discovery rules reflect the courts' and Congress' recognition that "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Hickman v. Taylor, 329 U.S. 495, 507 (1947). As a result, rule 26 "contemplates discovery into any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a case." Anaya v. CBS Broad., 251 F.R.D. 645, 649-50 (D.N.M. 2007)(Browning, J.).

Parties may use several methods, set forth in the Federal Rules of Civil Procedure, to conduct discovery. Parties may, "by oral questions, depose any person, including a party." Fed. R. Civ. P. 30(a)(1). Parties may also "serve on any other party no more than 25 written interrogatories." Fed. R. Civ. P. 33(a)(1). "An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(1). Parties may also "serve on any other party a request within the scope of Rule 26(b)" for production of documents in the

---

discovery by opposing counsel. See Fed. R. Civ. P. 26(b)(3).

"responding party's possession, custody, or control." Fed. R. Civ. P. 34(a). "Control comprehends not only possession, 'but also the right, authority, or ability to obtain the documents.'" Abreu v. N.M. Children, No. CIV 08-1006 JB/RLP, 2010 WL 4053978, at *4 (D.N.M. Sept. 30, 2010)(Browning, J.)(quoting Ice Corp. v. Hamilton Sundstrand Corp., 245 F.R.D. 513, 516 (D. Kan. 2007)). "Courts will find documents to be within a party's control if the party has actual possession, custody, control, or the legal right to obtain the documents on demand." Abreu v. N.M. Children, 2010 WL 4053978, at *4 (citing In re Bankers Trust Co., 61 F.3d 465, 469 (6th Cir. 1995)).

## RELEVANT LAW REGARDING RELEASE OF A PARTY'S RECORDS

Rule 26(a)(1) requires a plaintiff to provide a computation of damages claimed, and make available the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered. See Fed. R. Civ. P. 26(a)(1). The United States District Court for the District of New Mexico's Local Rules require that, in any case in which "the physical or mental medical condition of a party is an issue," the party must produce:

> (1) a list of the name, address and phone number of any healthcare provider, including without limitation, any physicians, dentists, chiropractors, mental health counselors, clinics and hospitals which have treated the party within the last five years preceding the date of the occurrence set forth in the pleadings; (2) all records of such healthcare providers which are already in that party's possession; (3) for each healthcare provider, a signed authorization to release medical records form, as set forth in Appendix "A" [to the District's Local Civil Rules].

D.N.M.LR-Civ. 26.3(d). Social Security records are relevant when a plaintiff asserts disability benefits in a medical malpractice lawsuit involving damages. See Bradley v. Val-Mejias, 00-2395-GTV, 2001 WL 1249339, at *8 (D. Kan. Oct. 9, 2001)("If Plaintiff did indeed file a claim for Social Security disability benefits in March 1997 (which Plaintiff has yet to confirm or deny), that claim would be relevant to his claim in this action that he has suffered permanently disabling

injuries as a result of the Defendants' claimed negligence."). The district court has authority to order a plaintiff to provide consent for release of Social Security records. Cf. Rodriguez v. IBP, Inc., 243 F.3d 1221, 1230 (10th Cir. 2001)("Control of discovery, however, lies in the sound discretion of the district court.").

The Court has previously recognized that a plaintiff's tax returns, in the plaintiff's possession, are discoverable when the plaintiff puts his or her income at issue: "Tax returns in the possession of the taxpayer are subject to discovery. A plaintiff's 'tax returns are not generally discoverable, however, unless the plaintiff's income is directly in issue. Otherwise, there is a public policy against an exposure.'" Trujillo v. Bd. of Educ. of the Albuquerque Pub. Sch., No. CIV. 02-1146 JB/LFG, 2007 WL 1306560, at *4 (D.N.M. Mar. 12, 2007)(Browning, J.)(alterations omitted)(citations omitted)(quoting Sanderson v. Winner, 507 F.2d 477, 480 (10th Cir. 1974))(citing St. Regis Paper Co. v. United States, 368 U.S. 208, 219 (1961)).

## ANALYSIS

Consistent with the Court's hearing on the Motion to Compel, the Court will deny Don Kelly's request to compel Madrid to provide a release for medical records or Social Security information, because Madrid has not sought medical services in the past five year and is not alleging damages for which discovery of Social Security records would likely lead to admissible evidence. The Court will grant Don Kelly's request to compel Madrid to provide tax records, with spousal information redacted, and employment information within the last ten years, because the information sought is limited in scope and is related to the discovery of admissible evidence which Don Kelly will use to further develop the facts of this case as well as possibly establish an after-acquired defense.

**I.     THE COURT WILL REQUIRE MADRID TO CALCULATE LOST WAGES IN AN AMENDED ANSWER TO INTERROAGORY NO. 1.**

Madrid seeks damages for past and future: lost wages and benefits, employment opportunities, lost income, loss of earning capacity, mental anguish, emotional pain and suffering, inconvenience, loss of enjoyment of life, as well as other non-pecuniary losses. See Complaint ¶ 16, at 3. Madrid asserts that he was terminated from Don Kelly ninety-eight weeks before answering Don Kelly's Interrogatories and did not work for fifty-eight weeks after his termination. See Supplemental Answer to Interrogatory No. 1, at 1; Motion to Compel at 3. Madrid calculates his lost wages, however, based on his regular and overtime pay for only the fifty-eight weeks after his termination from Don Kelly, during which he was unemployed. See Supplemental Answer to Interrogatory No. 1, at 1; See Affidavit ¶ 6, at 2. Rule 26(a)(1) requires a plaintiff to provide a computation of damages claimed and make available the documents on which such computation is based. See Fed. R. Civ. P. 26(a)(1). Madrid makes no calculations for any lost wages after fifty-eight weeks, even though he indicates that he is earning less at his subsequent job at IBWC. See Supplemental Answers to Interrogatory No. 1, at 1; Motion to Compel at 3. Don Kelly argues it is unclear whether Madrid is seeking damages for the fifty-eight week period during which he was unemployed or for the ninety-eight week period since he was terminated from Don Kelly. Don Kelly requests the Court to compel Madrid's answer whether he seeks damages, including lost wages, outside of the fifty-eight week period. See Motion to Compel at 3. The Court understands that Don Kelly is requesting this information to know the amount for which it may be liable, and to help it prepare for litigation. In light of the discovery rules' general policy supporting full disclosure of the allegations and evidence to all parties involved in the litigation, see, e.g., Uranium Contracts Litigation, 570 F.2d 899, 902 (10th Cir. 1978)("The strong policy of the federal discovery rules favoring full disclosure is of paramount importance."), the Court will thus order Madrid to file an amended answer to Interrogatory No. 1, and to clarify and to confirm whether he seeks damages outside the fifty-

eight-week period.  If Madrid is seeking damages past fifty-eight weeks, he needs to indicate the amount of the damages and provide, pursuant to rule 26, a calculation of those damages. Currently, no documents support Madrid's calculations.  See Motion to Compel at 3-4; Answer to Interrogatory No. 1, at 2; Liberty at 2:09:50-2:10:00 (Indhal).  At the hearing, Madrid agreed to include a statement indicating that he is not relying on any documents to support any updated damages calculation, and Don Kelly agreed to waive the specific rule 26 documents requirement and accept Madrid's submission.  See Liberty at 2:11:04-2:11:15 (Duke, Indhal).  The Court will therefore order Madrid to amend his answer to Interrogatory No. 1 and include whether he will seek damages past the fifty-eight week period; if he does seek these damages, Madrid must also include a statement indicating that he is not relying on any documents to support the new damages calculation.  See Liberty at 2:10:23-2:11:03 (Court).

## II. THE COURT CONCLUDES THAT MADRID MUST SIGN THE EMPLOYMENT RELEASE, BECAUSE THE INQUIRY IS LIMITED IN TIME AND SEEKS DISCOVERY THAT WILL LIKELY LEAD TO ADMISSIBLE EVIDENCE.

Madrid seeks damages for past and future: lost wages and benefits, employment opportunities, lost income, and loss of earning capacity.  See Complaint ¶ 16, at 3.  Rule 26(a)(1)'s requirement to provide a computation of damages claimed includes "materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii).  Past and subsequent employer information is discoverable information in an employment action where past and future wages, benefits, employment opportunities, and earning capacity are alleged.  See Stranger v. Checker Auto Parts, No. CIV 05-632 JB, 2006 WL 1304948 (D.N.M. Mar. 24, 2006)(Browning, J.).  In Stranger v. Checker Auto Parts, the issues in a motion to compel revolved around "such fundamental matters as Stranger identifying her medical providers and past and present employers."  2006 WL 1304948, at *14. The Court concluded that the

information the defendant sought, including past and subsequent employer information, was discoverable:

> Under rule 26, the discovery requests are pertinent to Stranger's Title VII claims and to CSK's defenses. The information sought bears upon, or is reasonably calculated to lead to, evidence on whether Stranger was harassed; whether she provided complete, accurate facts on her employment application; whether there were alternative grounds upon which CSK, assuming it then knew of such grounds, may have terminated her employment; the nature and extent of Stranger's actual injuries and distress, if any; and the actual or alternative causes for any such injury or distress. Thus, CSK seeks discovery concerning relevant topics.

2006 WL 1304948, at *14.

Don Kelly seeks past employer information to reveal Madrid's earnings both before and after Don Kelly employed Madrid, reasons for termination or dismissal if available, and dates of employment, so that it may develop the facts of this case and possibly establish an after-acquired defense. See Liberty at 2:16:59-2:18:40 (Indhal). The release sought will cover Madrid's employers for the past ten years. Although ten years may seem excessive, given that Madrid was hired by Don Kelly June 28, 2010 and terminated November 29, 2010, see Affidavit at 2, the ten year release will provide information about Madrid's employment prior and subsequent to Don Kelly but not his entire employment history. The limited time period focuses on Madrid's employment that is the most relevant to this action by providing his recent earning information and documents that should help determine whether Madrid provided complete, accurate facts on his employment application. As in Stranger v. Checker Auto Parts, because the damages Madrid seeks are broad, and include past wages and benefits, the Court finds that the inquiry is limited in time and the information sought concerns relevant topics, and thus seeks information that may lead to admissible evidence. See Liberty at 2:19:08-2:19:31 (Court). The Court will therefore order Madrid to sign the employment release.

**III.    THE COURT WILL NOT ORDER MADRID TO SIGN A MEDICAL RELEASE, BECAUSE MADRID SUBMITS HE HAS NOT SOUGHT MEDICAL**

**ATTENTION FOR FIVE YEARS AND THEREFORE A RELEASE WOULD NOT LEAD TO DISCOVERABLE INFORMATION.**

The Court's Local Rules require that, in any case in which "the physical or mental medical condition of a party is an issue," the party must produce:

> (1) a list of the name, address and phone number of any healthcare provider, including without limitation, any physicians, dentists, chiropractors, mental health counselors, clinics and hospitals which have treated the party within the last five years preceding the date of the occurrence set forth in the pleadings; (2) all records of such healthcare providers which are already in that party's possession; (3) for each healthcare provider, a signed authorization to release medical records form, as set forth in Appendix "A" [to the District's Local Civil Rules].

D.N.M.LR-Civ. 26.3(d). The Court has, in the past, concluded that an emotional damages claim puts at issue a party's physical or mental medical condition:

> A victim of discrimination who alleges emotional harm need not present evidence that he or she received professional counseling. There is also no dispute that evidence concerning these matters is not relevant to the issue whether Peters was the victim of unlawful race discrimination . . . . However, . . . this evidence is relevant to the issue of damages and, particularly, the extent to which, if any, Peters sustained emotional injuries. The EEOC made this issue material by seeking damages for emotional harm in its Complaint.

E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles, No. CIV 02-1644 JB/RHS, 2008 WL 2229489, at *4 (D.N.M. Feb. 14, 2008)(Browning, J.). See Smith v. Nw. Fin. Acceptance, Inc., 129 F.3d 1408, 1417 (10th Cir. 1997)(noting that "the testimony of a treating physician or psychologist . . . is one suggested method of proving emotional damages").

Madrid seeks damages for mental anguish, emotional pain and suffering, inconvenience, loss of enjoyment of life, as well as other non-pecuniary losses. See Complaint ¶ 16, at 3. The Court recognizes that, under local rule 26.3(d), Don Kelly may be entitled to medical records, given that Madrid has put his emotional health into dispute by claiming damages for mental anguish and emotional pain. See E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles, 2008 WL 2229489, at *4. Although the scope of discovery is broad, see Gomez v. Martin Marietta Corp., 50 F.3d at 1520, rule 26 establishes that discovery is allowed only if it "appears

-15-

reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(a)(1). Because Madrid states that he has not visited a doctor in the past five years and information concerning his health is not available, see Motion to Compel at 5-6; Answers to Interrogatories at 6-7, a medical release here would not likely lead to admissible evidence. The EEOC in E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles, sought the Court's protection from answering questions about the discrimination victim's medical history; the Court concluded that the information was discoverable, because "a jury could determine that [the victim's] failure to seek professional counseling or treatment has a 'tendency to make' the EEOC's claim that he has sustained emotional injuries 'less probable.'" 2008 WL 2229489, at *4 (quoting Fed. R. Evid. 401). Madrid does not have medical records in his possession nor can he provide the names of healthcare providers to which a release for medical records could be authorized, because he represents that he has not sought out medical treatment in the past five years. Thus, the lack of medical information provides Don Kelly with the same information that the Court found would be useful in E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles: that Madrid has not sought professional help for his alleged emotional damages. Madrid represents that he has not visited a doctor nor has any health information in his possession, and that information is sufficient to meet what the Court concluded relevant in E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles, that the medical release presents the danger of leading to a "fishing expedition." Brown v. Montoya, No. CIV 10-0081 JB/ACT, 2013 WL 1010390, at *16 (D.N.M. Mar. 8, 2013)(Browning, J.)("A district court is not, however, 'required to permit [a party] to engage in a 'fishing expedition' in the hope of supporting [an assertion.]'")(quoting McGee v. Hayes, 43 F. App'x 214, 217 (10th Cir. 2002)(unpublished)). Given that Madrid represents that it has been more than five years since he visited a physician, the release of medical information would not likely lead to admissible evidence, and the Court will thus not compel Madrid to sign a medical

release. The Court will, however, require Madrid to execute an affidavit and represent, under oath, that it has been more than five years since he last visited a physician. Additionally, if Madrid seeks services from a doctor, the Court orders that he will then need to sign releases allowing Don Kelly access to medical records and Don Kelly can re-depose him. See Liberty at 2:24:42-2:25:45 (Court).

## IV. THE COURT WILL NOT ORDER MADRID TO SIGN A SOCIAL SECURITY RECORDS RELEASE.

The district court has authority to order a plaintiff to provide consent for release of Social Security records. See Rodriguez v. IBP, Inc., 243 F.3d at 1230 (holding that it was proper for district court to compel the plaintiff to sign a Social Security records release, noting that "[c]ontrol of discovery . . . lies in the sound discretion of the district court"). Don Kelly requests that the Court compel Madrid to execute releases for Social Security records. Madrid argues, however, that the documents do not exist and that the releases are overly broad, are not limited in time, lack specificity, and seek information beyond the scope of discovery. See Motion to Compel at 7; Response to Production at 2. Although the scope of discovery is broad, rule 26 establishes that discovery is allowed only if it is reasonably able to lead to admissible evidence. See Fed. R. Civ. P. 26(a)(1). Social Security records provide information about an individual's wages (or other income), employment, and employer identification information:

> The Commissioner of Social Security shall establish and maintain records of the amounts of wages paid to, and the amounts of self-employment income derived by, each individual and of the periods in which such wages were paid and such income was derived and, upon request, shall inform any individual or his survivor, or the legal representative of such individual or his estate, of the amounts of wages and self-employment income of such individual and the periods during which such wages were paid and such income was derived, as shown by such records at the time of such request

42 U.S.C. § 405. Madrid submits that he has not sought Social Security benefits, see Motion to Compel at 7; Response to Production at 2, and although a release would lead to information

related to Madrid's income, employment, or employer's information, discovery about Madrid's Social Security records would therefore not lead to admissible evidence. Thus, as the Court stated at the hearing, because Madrid is not alleging recovery of Social Security benefits, it will not compel him to sign the releases. The Court will, however, require Madrid to execute an affidavit and affirmatively represent that he has not applied for and not contacted Social Security in the last five years and that he is not seeking Social Security benefits. If Madrid later seeks services from Social Security, then the Court will order Madrid to sign releases allowing Don Kelly access to the social security records and Don Kelly can then also re-depose Madrid. See Liberty at 2:24:42 PM 20:08 (Court).

**V.    THE COURT WILL ORDER MADRID TO PRODUCE TAX RETURNS, BECAUSE MADRID HAS PUT HIS INCOME AT ISSUE, AND HIS PERSONAL TAX RETURNS ARE THUS SUBJECT TO DISCOVERY.**

Don Kelly asks Madrid to produce his W-2 statements, and his state and federal income tax returns. Madrid refuses, asserting that they are not in his possession and are beyond discovery's scope. See Motion to Compel at 6-7; Response to Production at 2. "Tax returns are not generally discoverable. It is only when the plaintiff's income is directly in issue. Otherwise there is a public policy against exposure." Sanderson v. Winner, 507 F.2d at 480. Tax returns in the possession of the taxpayer are subject to discovery. See St. Regis Paper Co. v. United States, 368 U.S. at 208)("Although tax return . . . are made confidential within the government bureau, copies in the hands of the taxpayer are held subject to discovery"). In Trujillo v. Bd. of Educ. of the Albuquerque Pub. Sch., the plaintiff, alleging wrongful termination and seeking lost pay damages, and "damages in unspecified amounts for loss of medical and annual leave, loss of benefits, and loss of equity on an allegedly 'forced sale' of his primary home," sought a protective order for his tax returns. 2007 WL 1306560, at *1. The Court concluded that the plaintiff's claims for back-pay and future-pay put his income directly at issue, and "because the

tax returns contain financial information essential to determining the validity of [the plaintiff]'s claims for lost pay and the issue of mitigation of damages," the tax returns were relevant and discoverable. 2007 WL 1306560, at *4. The Court thus denied the plaintiff's request for the protective order, and compelled production of the tax returns. See 2007 WL 1306560, at *5-6.

Madrid has put his income at issue here, by asserting claims for past and future lost wages and benefits, lost income, and loss of earning capacity from the alleged discrimination; thus, his personal income tax returns are discoverable. See Complaint ¶ 16, at 3; 26(a)(1). Currently, Madrid asserts that he does not have his W-2 statements, state tax returns, or federal tax returns in his possession. At the hearing, however, Madrid's counsel stated he will request the information from the Internal Revenue Service and the New Mexico Taxation and Revenue Department. See Liberty at 2:09:50-2:10-11 (Duke). Because Madrid has put his income at issue, and, because Madrid will obtain his W-2 statements and tax returns, the Court will compel discovery of Madrid's personal tax returns. The Court will order the production of tax returns with information from Madrid's spouse redacted, however. See Liberty at 2:29:33-2:30:59 (Court). Additionally, the Court will order Don Kelly to produce and send a confidentiality order to Madrid. See Liberty at 2:29:56-2:30:59 (Court).

**IT IS ORDERED** that the Defendant's Motion to Compel Evidence and Memorandum Brief in Support Thereof, filed November 8, 2012 (Doc. 30) is granted in part and denied in part. The Court orders that Plaintiff David Madrid amend his answers to Defendant Don Kelly Construction, Inc.'s discovery requests to calculate the lost wages he seeks, provide any documents on which he relies to calculate those damages in the amended answer, and, if he does not rely on any documents to calculate the lost wages, to state, under oath, that he does not rely on any documents to calculate the lost wages in the amended answer. The Court additionally orders Madrid to sign the employment release, and to produce tax returns with information

regarding Madrid's spouse redacted. The Court does not order Madrid to sign a medial release or a release for Social Security records unless he seeks medical or social security services during this litigation. The Court orders, however, that Madrid execute an affidavit and state, under oath, that he has not visited a physician, has not applied for or otherwise contacted Social Security, in the last five years, and that he is not seeking Social Security benefits in this lawsuit.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Brett Duke
Brett Duke, P.C.
El Paso, Texas

-- and --

Raymond D. Martinez
Martinez & Martinez Law Firm
El Paso, Texas

    *Attorneys for the Plaintiff*

George R. McFall
Anna E. Indahl
Modrall Sperling Roehl Harris & Sisk
Albuquerque, New Mexico

    *Attorneys for the Defendant*